ELIZABETH ANN KRACHT, appellee, v. PAUL JOHN WILLIAM HOEPPNER and C & M EQUIPMENT COMPANY, appellants.

No. 52009.

(Reported in 140 N.W.2d 913)

MARCH 8, 1966.

Sackett & Sackett, of Spencer, for appellants.

James, Greer, Nelson & Bertell, of Spencer, for appellee.

MOORE, J.—The sole question on this appeal by defendants is whether the trial court erred in granting a new trial following a jury verdict for them in plaintiff's action for damages caused by defendants' automobile striking that of plaintiff from the rear. We affirm the trial court. It is admitted defendant Hoeppner was driving a leased automobile owned by defendant C & M Equipment Company. For clarity he is referred to as defendant.

About 1:30 p.m., March 6, 1963, plaintiff was driving her Comet automobile south on the blacktop road north of Peterson in Clay County when it was struck from the rear by defendant's automobile. Plaintiff and defendant were the only witnesses to the accident. Their testimony is in sharp conflict.

Plaintiff testified she was traveling 40 miles an hour in the west lane, started slowing down 350 to 400 feet north of an intersection with a farm road at which she intended to turn left, saw defendant's car about one-fourth mile back of her, applied her brakes 100 to 200 feet north of the intersection and when forty feet from the intersection and still moving was struck terribly hard from the rear by defendant's car causing her vehicle to lurch forward and into a ditch upside down causing her serious personal injuries and $700 car damage.

Defendant testified he had followed plaintiff south two or three miles prior to the accident at approximately 45 miles per hour, was two or three hundred feet behind plaintiff's vehicle just prior to the accident, observed her slow down, started decreasing his speed, then saw a flash of red lights, applied his brakes and turned left but his right front fender hooked the left rear of plaintiff's car. He further testified he applied his brakes one and a half car length north of the intersection, was going

ten miles per hour at the time of impact and the debris from the accident was in the intersection. Defendant was uncertain whether plaintiff's car was still moving when struck. He estimated his car damage at $400 but did not counterclaim.

Each party testified regarding statements made by the other which were indicative of some admission of fault.

The investigating highway patrolman fixed the point of impact on the west side of the road between 23 and 46 feet north of the intersection.

The accident happened on a bright sunny day. The intersection and approach from the north were level and the view unobstructed. The surface of the road was slushy but according to the parties did not interfere with driving.

During the trial no motions were made by either party, no objections made and no exceptions taken to the instructions.

Following a day of trial, the instructions were read and the case submitted to the jury at 4:35 p.m., October 21, 1964. After deliberating all night, the jury at six a.m., October 22, returned a verdict for defendants.

Plaintiff thereafter filed a motion for new trial under rule 244, Rules of Civil Procedure, on the grounds the verdict: (1) was not sustained by sufficient evidence, (2) was contrary to the evidence and applicable law, (3) represented a gross miscarriage of justice, and (4) denied plaintiff substantial justice.

The trial court's order sustaining the motion for new trial on all alleged grounds reviews the evidence and indicates the jury may not have understood the evidence.

In considering defendant's contention the issues of negligence and contributory negligence are peculiarly within the province of the jury and not the court the trial judge quotes as follows from Coleman v. Brower Construction Co., 254 Iowa 724, 730, 731, 119 N.W.2d 256, 259, 260:

"It may be admitted the case was properly for the jury and plaintiff was not entitled to a directed verdict. However, we have frequently held this does not prevent trial courts from exercising their inherent power to grant another trial in the interest of justice. Burke v. Reiter, 241 Iowa 807, 42 N.W.2d 907; Hall v. West Des Moines, 245 Iowa 458, 462, 463, 62 N.W.2d 734, 736,

737; In re Estate of Hollis, 235 Iowa 753, 761, 16 N.W.2d 599, 603; Porter v. Madrid State Bank, 155 Iowa 617, 619, 136 N.W. 666. Nor is it necessary reversible error was committed upon the trial. If such were the rule, the inherent power of the court to correct a failure of justice would be meaningless. Hall case, supra; Nicholson v. City of Des Moines, 246 Iowa 318, 330, 67 N.W.2d 533, 540.

"We have repeatedly held trial courts should grant a new trial when they feel the verdict fails to administer substantial justice or it appears the jury has not responded truly to the real merits of the controversy. White v. Walstrom, 254 Iowa 646, 652, 118 N.W.2d 578, 581, 582, and citations; Haase v. Hub-Co Credit Union, 253 Iowa 1202, 1204, 115 N.W.2d 880, 882; Whiting v. Cochran, 241 Iowa 590, 592, 593, 41 N.W.2d 666, 667, 668."

Defendant concedes these general principles are well established. Our later cases recognize and apply them. See Larew v. Iowa State Highway Commission, 254 Iowa 1089, 120 N.W.2d 462; Comer v. Burns, 255 Iowa 251, 122 N.W.2d 305; Mazur v. Grantham, 255 Iowa 1292, 125 N.W.2d 807; Warrender v. McMurrin, 256 Iowa 617, 128 N.W.2d 285; Coulthard v. Keenan, 256 Iowa 890, 129 N.W.2d 597.

However, it is defendant's position there was no reason for a new trial and the trial court abused its discretion.

It is so well established authorities need not be cited in support of the propositions the trial courts have a broad but not unlimited discretion in determining whether a verdict effectuates substantial justice and we are slower to interfere with the grant of a new trial than with its denial. Rule 344(f), subparagraphs 3, 4, Rules of Civil Procedure.

We interfere reluctantly and infrequently with a grant of new trial and only upon a clear showing of abuse of discretion. We do not disturb such an order unless we can say there was no reasonable ground for the trial court to believe the jury reached an erroneous verdict which may be obviated upon a second trial. Comer v. Burns, 255 Iowa 251, 258, 259, 122 N.W.2d 305, 310, 311, and citations.

We believe good reason is affirmatively shown in this case which supports granting new trial. We must conclude the

jury was to some extent coerced and pressurized by being required to deliberate all night. An assumption was inescapable they would remain in the jury room longer if a verdict was not returned.

Volume 39 Am. Jur., New Trial, section 103, states: "It is doubtless misconduct vitiating a jury's verdict and requiring the granting of a new trial for the judge presiding at the trial by his language or actions to coerce the jury into agreeing upon a verdict. Our law does not tolerate any threat to or coercion of the jury." 53 Am. Jur., Trial, section 964, states: "The imposition of hardships upon a jury or a threat by a court to impose hardships may constitute coercion vitiative of a verdict." 66 C. J. S., New Trial, section 58 (h), states: "A new trial should be granted where, after the jury had been out a considerable length of time, a verdict was quickly agreed on, under the evident influence of coercive statements or a threat by the judge or officer in charge of a long confinement, or other hardship." See also annotations, 10 A. L. R. 421, 109 A. L. R. 72, 19 A. L. R.2d 1257; People v. Sheldon, 156 N. Y. 268, 50 N.E. 840, 41 L. R. A. 644, 66 Am. St. Rep. 564; Mead v. City of Richland Center, 237 Wis. 537, 297 N.W. 419.

In a very early case, Cole v. Swan, 4 (Greene) Iowa 32, this court reversed the trial court and ordered a new trial where the bailiff had informed the jury they would be kept by the court from Saturday evening until Monday morning without anything to eat unless they agreed to a verdict.

In Clemens v. Chicago, R. I. & P. Ry. Co., 163 Iowa 499, 144 N.W. 354, we ordered a new trial when the record disclosed the jury had deliberated 50 hours, was given a verdict urging instruction and thereafter deliberated 20 hours before returning a verdict. At page 509, 163 Iowa, pages 357, 358, 144 N.W., we say: "Such confinement, of necessity, has a depressing effect upon them, rendering them incapable of exercising their intellectual faculties to the best purpose. It is wearisome to the body and depressing to the mind. To hold them in confinement for that length of time, to then call them into court and tell them that, if they do not agree with the majority, they should 'doubt the correctness of their own judgment,' and 'should therefore scru-

tinize the evidence more closely, and re-examine the grounds of their opinion,' leads the mind to the more reasonable suspicion that they ceased further resistance, gave up their own convictions, and surrendered to the majority, than that they proceeded thereafter to the laborious and uncertain task of convincing themselves that they were wrong. * * * It is not the purpose of the trial to secure *a* verdict, but rather *the* verdict of the jury, in all the fullness of the meaning of the word itself, independently and freely assented to by each member of the panel."

In State v. Peirce, 178 Iowa 417, 424, 159 N.W. 1050, 1054, we summarize our earlier cases and point out that a verdict urging instruction which suggests the jury would be kept together until it agreed is erroneous.

In State v. Green, 254 Iowa 1379, 121 N.W.2d 89, 95 A. L. R.2d 810, we reverse a conviction of arson and order a new trial where the jury deliberated 27 hours without a night's lodging. We held under such conditions and circumstances defendant's rights were seriously prejudiced and he did not receive a fair trial.

In Coulthard v. Keenan, 256 Iowa 890, 129 N.W.2d 597, we affirm granting new trial where the jury had deliberated eleven and one-half hours, reported they were hopelessly deadlocked, were given a verdict urging instruction at 2:05 a.m. and within a few minutes returned a verdict. At page 898, 256 Iowa, pages 601, 602, 129 N.W.2d, we say: "We realize the trial court has a good deal of discretion as to how long a jury should deliberate and whether to give a verdict-urging instruction and we are slow to reverse upon such a ground. Although we do not hold there was reversible error here in this respect, we do think sending a jury back to its jury room about 2:10 a.m. after it reported it was hopelessly deadlocked and after orally urging an agreement is not to be commended. As previously indicated, the trial court might reasonably conclude this circumstance furnished additional basis for setting aside the verdict and granting a new trial."

We find no valid reason to require a jury to deliberate all night. If the attorneys are unwilling to agree the jurors be released under proper admonition until the next morning the jury should be furnished proper sleeping quarters as authorized

by rule 202, Rules of Civil Procedure, which provides: "Food and lodging. The court may order the sheriff to provide suitable food and lodging at the expense of the county for a jury being kept together to try or deliberate on a cause."

We find no abuse of discretion in granting new trial.—Affirmed.

GARFIELD, C. J., and LARSON, MASON, RAWLINGS and BECKER, JJ., concur.

STUART, THORNTON and SNELL, JJ., dissent.

STUART, J.—The discretion of the trial court in granting a new trial must be supported by a reason which fairly appears in the record. Mazur v. Grantham, 255 Iowa 1292, 1302, 125. N.W. 2d 807; McCoy v. Miller, 257 Iowa 1151, 1159, 136 N.W.2d 332, 337; Lubin v. Iowa City, 257 Iowa 383, 385, 131 N.W.2d 765, 767; Jacobsen v. Gamber, 249 Iowa 99, 102, 86 N.W.2d 147; Sparks v. Long, 234 Iowa 21, 23, 11 N.W.2d 716; Copeland v. Junkin, 198 Iowa 530, 534, 199 N.W. 363.

The majority states there is a sharp conflict in the testimony. The trial court and appellee believe the jury reached the wrong result. This may be, but neither the trial court nor appellee points to anything in the record, other than their evaluation of the evidence, to show it resulted from anything other than the nature of the jury system itself. We are getting ourselves in serious difficulty if we permit the court to second-guess the jury on factual issues.

We have seized upon the bare fact that a jury was held out overnight without sleeping facilities as a reason for affirming the granting of a new trial. There is no suggestion in the record that this had any effect on the jury verdict. The appellee did not include this fact as a ground for new trial. The trial court does not mention it in his ruling nor is it argued by appellee in her written brief and argument. We are in effect holding that the mere fact a jury is held out overnight without sleeping facilities is sufficient reason to affirm the granting of a new trial. I believe we are reaching out too far. I would reverse.

THORNTON and SNELL, JJ., join in this dissent.