Carma RASMUSSEN, Conservator of the Property of Glen Rasmussen, Appellant,

v.

LeRoy M. THILGES and Felix Thilges, Appellees.
Carma RASMUSSEN, Appellant,

v.

LeRoy M. THILGES and Felix Thilges, Appellees.

No. 53604.

Supreme Court of Iowa.

Feb. 10, 1970.
Rehearing Denied April 6, 1970.

Arthur W. Smith, and Hanson & Bormann, Emmetsburg, for appellants.

James, Greer, Nelson & Bertell, Spencer, and Prichard & Doran, Emmetsburg, for appellees.

STUART, Justice.

This lawsuit is a consequence of a head-on collision between two vehicles driven by farm neighbors. The jury denied recovery on both the claim and counterclaim. Plaintiff has appealed assigning 19 errors, most of which are interrelated questions of the admissibility of certain evidence affecting the sufficiency of the evidence.

There is little serious conflict over most of the facts. At about 4:30 p. m. on November 20, 1965, a sunny, dry day, LeRoy Thilges, hereinafter referred to as defendant, was driving his father's pickup in an easterly direction on a gravel road in Palo Alto County at a speed of about 35 miles per hour. At the same time Glen Rasmussen was driving his Plymouth station wagon in a westerly direction along the same road at about the same speed. They collided about 20 feet east of the crest of a hill over which the sight distance was less than 700 feet. The hill was not steep and defendant's engineer who established the crest with instruments testified it would have been difficult to locate it within 100 feet visually. There were no skid marks.

The vehicles remained locked together. The damage was to the *right* ⅔rds of the front end of each vehicle. Neither left headlight was broken. In the usual head-on collision the left front ends are involved. The only movement of the vehicles after the collision was a slight clockwise rotation around the point of impact. The pickup with a higher center of gravity was likely to rotate more.

I. As in most head-on cases, fault is determined by deciding which vehicle was on the wrong side of the road at the time of the collision. Involved in that determination here is the location of the center line. The roadway was 24 feet wide. Defendant claims a layer of loose gravel over three feet wide on the south side limited the traveled portion to 21 feet, moving the center line 1½ feet to the north or plaintiff's side of the road. Based on this assumption defendant's accident reconstruction expert placed the point of impact in the center of the traveled portion of the road, which in turn established that both vehicles were over the center line.

Plaintiff objected to and assigned as error the admissibility of the testimony and exhibits which were necessary to establish defendant's contention that the roadway was only 21 feet wide at the time of the accident.

Exhibit 4 consisted of two pictures taken shortly before trial and more than two years after the accident. They disclose a level strip of loose bladed gravel along the south side of the road about 3½ feet wide and a few inches deep. They clearly define the traveled portion of the road at that time. There was evidence the contours of road had not been changed between the date of the accident and the day the pictures were taken.

Plaintiff had introduced pictures taken the day after the accident which showed a similar area of loose gravel along the south side of the road. Mr. Schany, in front of whose farm the accident occurred, examined exhibit 4 and testified the gravel in the pictures was "close" to the way it was on the date of the accident. On cross-examination he testified the width and depth could vary according to the patrol operator and he didn't know if it was in exactly the same width or depth. The concluding question and answer were:

"Q. And when you say this is substantially the same, what you mean is that it is

—the gravel is on the south side of the road? A. Yes, in the same general area."

This evidence, together with plaintiff's pictures taken the day after the accident, was sufficient foundation for the admission of the pictures and the use of a 21 foot wide traveled portion under defendant's theory of the case.

Professor Van Vleet, defendant's accident reconstruction expert, whose impressive qualifications were not questioned, viewed the site of the accident, took measurements and prepared exhibit 13 which is a plat drawn to scale showing a 24 foot roadway with a three foot strip of loose gravel along the south side leaving a traveled portion 21 feet wide. It included two cardboard scale replicas of the vehicles involved, showing the damaged area, weight and length. He was asked to make several assumptions of fact supported by the evidence and expressed the opinion that the point of impact was on the center line of the 21 foot traveled portion of the road.

The witness assumed defendant's left rear wheel was two feet from the north edge of the road. He originally assumed plaintiff's left rear wheel was nine feet from the south side of the road. It is not clear whether the assumed location of plaintiff's left rear wheel in the final hypothetical question was nine, six or seven feet from the south side. There is evidence in the record to support any of the assumptions. Defendant's father and co-defendant testified he stepped off the distance of six feet. Mr. Miller testified he passed between the edge of the road and plaintiff's car in a six and one-half foot wide automobile and had at least six inches clearance. No one placed the wheel farther than nine feet from the edge of the road.

In Dougherty v. Boyken (1968), Iowa, 155 N.W.2d 488, 493, we approved of the use of qualified persons as experts in the field of accident reconstruction. We required however that the facts on which the opinion is based be stated together with their source. Page 495. We held the admission of the expert's testimony in that case error because there was insufficient recitation of the facts upon which he relied and the opinion was based in part on hearsay.

■ The admission or exclusion of expert testimony rests largely in the trial court's discretion. The discretion is not unlimited, but must be based on sound judicial reasons. The trial court will be reversed only on a clear showing of abuse of such discretion. Dougherty v. Boyken, supra, and citations.

. ■ The foundation for Professor Van Vleet's testimony was far more complete here. He testified he viewed the scene, examined all exhibits relating to the accident and was asked to assume certain facts supported by the evidence. The foundation upon which he based his opinion included the speed and direction of travel of the vehicles prior to the accident, the damaged areas on the vehicles, the width of the traveled portion of the highway, the position of the cars in relation to each other and the highway after the impact. He explained the physical law of "conservation of linear momentum" which entered into his opinion.

An opinion as to the point of impact under these particular facts did not require as detailed a foundation as other more speculative questions where there is considerable movement of the vehicles after the collision.

We hold the foundation facts established and recited as a basis for the expert's opinion here meet the tests laid down in Dougherty v. Boyken, supra.

■ There was evidence the front left wheel of defendant's vehicle was three feet from the north side of the road. Van Vleet did not assume this was a fact and stated it was not consistent with the location of the oil and anti-freeze shown in the pictures taken the day after the accident.

The oil and anti-freeze were located mostly on the north side of the 24 foot roadway. This is not inconsistent with defendant's theory of the case. The center of the 21 foot traveled portion would be 1½ feet north of the center or crown of the roadway and liquids would tend to flow to the north. This three foot distance is not consistent with defendant's theory of the case and it is not necessary to include it in the hypothetical question. Poweshiek County National Bank v. Nationwide Mutual Insurance Co. (1968), Iowa, 156 N.W. 2d 671, 676, and citations.

There was sufficient evidence from which the jury could find the accident occurred in the middle of the road and both cars were partially on the wrong side of the road and that neither driver saw the other vehicle soon enough to react to the impending collision.

■ II. This holding disposes of plaintiff's first four alleged errors contrary to his contentions. The evidence was sufficient to justify the court in submitting to the jury the allegation of plaintiff's negligence in failing to yield one-half of the traveled way, driving on the wrong side of the road when approaching the crest of a hill, failing to have his vehicle under control, and failing to keep a proper lookout. Spry v. Lamont (1965), 257 Iowa 321, 330, 132 N.W.2d 446, 451, and citations.

■ He also claims such negligence, if any, could not have been the proximate cause of the accident as the accident would have occurred even if Glen Rasmussen was driving his car farther north on the north half of the road. The question of proximate cause is ordinarily for the jury and only in exceptional cases is it decided as a matter of law. See Rule 344(f) (10), Iowa Rules of Civil Procedure. We have been cited no cases which resolve liability on the basis of which car was further over the center line. We do not believe this fact should be determinative of proximate cause even if the evidence were undisputed on this particular point.

III. The trial court refused to submit the allegation of negligence that defendant drove his vehicle on the wrong side of the road in approaching the crest of a grade where the unobstructed view is 700 feet or less. We need not get into the difficult propositions of negligence and proximate cause created by the fact that defendant was 20 feet past the crest of the hill when the collision occurred because any error on this point would be harmless.

■ The jury found against defendant on his counterclaim and as they also found against plaintiff on his claim, they must have concluded both parties were negligent. As this is the case, there was no prejudice to plaintiff in the refusal to submit another specification of negligence on the part of defendant. See: Olson v. Truax (1959), 250 Iowa 1040, 1044–1047, 97 N.W.2d 900, 903–904, and citations.

IV. The trial lasted 4½ days. The court began to instruct the jury at 3:15 p. m. The verdict was returned at 12:05 the next morning. Plaintiff, in his motion for new trial, claimed this to be error. No previous objection had been voiced.

■ The general rule is that the length of time during which a jury is kept together for deliberation is a matter within the discretion of the trial judge. A reversal is proper only when this discretion is abused. Coulthard v. Keenan (1964), 256 Iowa 890, 898, 129 N.W.2d 597, 601; State v. Siegel (1936), 221 Iowa 429, 434, 264 N.W. 613.

■ We have in recent cases stated our objection to requiring the jury to deliberate into the early hours of the morning. State v. Kittelson (1969), Iowa, 164 N.W.2d 157, 167; Gibbs v. Wilmeth (1968), Iowa, 157 N.W.2d 93, 100; Kracht v. Hoeppner (1966), 258 Iowa 912, 917–918, 140 N.W.2d 913, 916; Coulthard v. Keenan (1964), 256 Iowa 890, 898, 129 N. W.2d 597, 601; State v. Green (1963), 254 Iowa 1379, 1390, 121 N.W.2d 89, 93, 95

A.L.R.2d 810. We held it sufficient grounds to support the granting of a new trial in Kracht v. Hoeppner, supra, and Coulthard v. Keenan, supra. We did not decide whether it was reversible error in State v. Kittelson, supra, and Gibbs v. Wilmeth, supra. In State v. Green we held the circumstances revealed the effect of prolonged deliberation on members of the jury and deprived defendant of a fair trial. We reversed the case on that ground. The situation here does not compare with that in Green. We do not believe the trial court abused its discretion in permitting the jury to deliberate until five minutes after midnight.

V. Plaintiff claims the court erred in failing to grant a new trial because of misconduct of the jury in (a) speculating on the costs, (b) speculating on guilt feelings of defendant, (c) in failing to consider and follow instruction on proximate cause, (d) in using a ruler which was part of exhibit 13 to make measurements on photographs of damage to the vehicles and depth of the gravel, (e) in moving the cardboard replicas of the vehicles around on the plat exhibit 13 into positions not shown by the evidence, and (f) in failing to follow the instructions.

Plaintiff supported these claims with the affidavit of his attorney and ten of the jurors. Defendant countered with affidavits from seven of the same ten jurors and an affidavit from one of the two remaining jurors. In substance each stated he conscientiously tried to follow the instructions and believed both drivers were negligent. Some stated they believed defendant was more on the wrong side of the road than plaintiff.

■ Although a juror may not impeach his own verdict by stating the reasons for it, Rancho Grande, Inc. v. Iowa State Highway Commission (1968), Iowa, 156 N.W.2d 293, 298; Bashford v. Slater (1959), 250 Iowa 857, 867, 96 N.W.2d 904, 910; Wiese v. Hoffman (1957), 249 Iowa 416, 429–430, 86 N.W.2d 861, 870; Hicks

v. Goodman (1957), 248 Iowa 1184, 1195, 85 N.W.2d 6, 12, it is proper to obtain affidavits from the jurors as to occurrences during trial or in the jury room to determine whether or not the jury has been guilty of misconduct. Hackaday v. Brackelsburg (1957), 248 Iowa 1346, 1350, 85 N. W.2d 514, 516; Stites v. Des Moines Transit Co. (1957), 249 Iowa 185, 189–190, 85 N.W.2d 905, 907; In re Murray's Estate (1947), 238 Iowa 112, 118, 26 N.W.2d 58, 63.

■ If what occurred amounted to misconduct and was such that it was calculated to and it is reasonably probable it did influence the verdict, the verdict should be set aside but the trial court has wide discretion in making this determination and we will not reverse unless it is clearly shown this discretion was abused. In re Estate of Cory (1969), Iowa, 169 N.W.2d 837, 845; Mead v. Scott (1964), 256 Iowa 1285, 1290, 130 N.W.2d 641, 644; Harden v. Illinois Central Railroad Co. (1961), 253 Iowa 341, 343, 112 N.W.2d 324, 325–326; Bashford v. Slater, supra; Hicks v. Goodman, supra; Hackaday v. Brackelsburg, supra; Stites v. Des Moines Transit Co., supra; Krieg v. Grant (1957), 248 Iowa 396, 401–407, 80 N.W.2d 724, 726–730.

■ It is not proper to consider statements purporting to state how the alleged misconduct influenced the opinions of the jurors on the verdict. Hutchinson v. Fort Des Moines Community Services, Inc. (1961), 252 Iowa 536, 541, 107 N.W.2d 567, 571; Wilson v. Iowa State Highway Commission (1958), 249 Iowa 994, 1000, 90 N.W.2d 161, 165; Hackaday v. Brackelsburg, supra.

■ Nor is it proper to consider matters which inhere in the verdict. This is primarily a practical recognition of the fact that deliberating juries roam far afield in their arguments and actions. If inquiry were permitted into such matters there would never be a finality as to jury

verdicts. Rancho Grande, Inc. v. Iowa State Highway Commission, supra; Long v. Gilchrist (1960), 251 Iowa 1294, 1299, 105 N.W.2d 82, 85; Kirchner v. Dorsey & Dorsey (1939), 226 Iowa 283, 297, 284 N.W. 171, 179; State v. Dudley (1910), 147 Iowa 645, 653, 126 N.W. 812, 815. Concededly it is difficult to draw the line between matters which inhere in the verdict and those which do not. We have often quoted, but have been unable to improve upon, the guidelines laid down in two early cases of this court.

"Affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, * * * but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as * * * that he misunderstood the instructions of the court; * * * that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations of judgment, or other matter resting alone in the juror's breast." Wright v. Illinois & Mississippi Telegraph Co. (1866), 20 Iowa 195, 210.

"Affidavits of jurors that they have been unduly influenced by their fellows, or of the reasons for assenting to the verdict, or of improper arguments resorted to in the jury room, or that they did not assent to the verdict, or that it was not the result of their deliberate judgment, or they did not understand the instructions of the court as these matters inhere in the verdict, are incompetent, and cannot be received to impeach the jury's findings." State v. Dudley (1910), 147 Iowa 645, 653, 126 N. W. 812, 815.

▮ The matters here urged as misconduct are at most improper arguments and inhere in the jury's verdict.

VI. Plaintiff claims trial court erred in failing to grant a new trial because of misconduct of counsel during defendant's arguments. Reference is made to two incidents.

The trial court had refused to instruct on sudden emergency. During closing defendant's argument the following exchange occurred:

"Mr. Prichard: * * * Now, ladies and gentlemen, in a sudden emergency lots of things happen. We don't remember all the details.

"Mr. Hanson: We object to any reference to this issue.

"Mr. Prichard: And I think that when two cars are approaching each other a person can very easily get excited."

The court did not rule on the objection.

We do not consider this argument improper. The phrase sudden emergency is not uncommon. There was no attempt to argue the law of sudden emergency as a legal doctrine. We do not see how this comment was in any way prejudicial to plaintiff.

Mr. Greer argued to the jury: "And I feel sorry for the plaintiff and I feel sorry for the defendants because of all this effects both these families. But worst than that, it will make an indelible mark on this young man if, under the law and this record, you believe that he deserves that."

No objection was made to this remark and Mr. Hanson replied in kind. We need not decide whether the argument was improper.

▮ The question is not properly before us as plaintiff did not preserve his objection to these comments. No exceptions were taken to Mr. Greer's remarks. No ruling was obtained on the objection to Mr. Prichard's remarks. The court was given no opportunity to admonish counsel or instruct the jury on the matter, if it saw fit. Shover v. Iowa Lutheran Hospital (1961), 252 Iowa 706, 716, 107 N.W.2d 85, 91, and citations; Connelly v.

Nolte (1946), 237 Iowa 114, 126, 21 N.W. 2d 311, 317, and citations; In re Scholbrock's Estate (1938), 224 Iowa 593, 596, 277 N.W. 5, 7; Crandall v. Mason (1924), 198 Iowa 139, 144, 197 N.W. 454, 456.

The trial court has broad discretion in passing on the propriety of jury argument and we will not reverse unless there has been a clear abuse of such discretion. Before a new trial will be granted for misconduct in argument it must appear prejudice resulted or a different result could have been probable but for such misconduct. Tilghman v. Chicago & Northwestern Railway Co. (1962), 253 Iowa 1339, 1354, 115 N.W.2d 165, 174; Clubb v. Osborn (1967), 260 Iowa 223, 231, 149 N.W.2d 318, 322. We do not believe the trial court abused its discretion or that a different result would have been probable but for the alleged misconduct.

Other alleged errors not specifically mentioned are based upon one or more of the matters previously discussed and require no further comment.

Having found no reversible error we affirm the trial court.

Affirmed.

All Justices concur, except REES, J., who takes no part.