**IN THE COURT OF APPEALS OF IOWA**

No. 16-0429
Filed March 22, 2017

**MARK WELLS PAINE and DENISE ANN PAINE,**
    Plaintiffs-Appellants,

**vs.**

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, Christopher

C. Foy, Judge.


        The plaintiffs appeal adverse summary judgment rulings on their claims

against the defendant and the denial of their post-trial motion for additur.

**AFFIRMED.**




        Steve J. Crowley and Edward J. Prill of Crowley, Bunger & Prill,

Burlington, for appellants.

        Joel T.S. Greer of Cartwright, Druker & Ryden, Marshalltown, and Mark S.

Brownlee of Kersten Brownlee Hendricks L.L.P., Fort Dodge, for appellee.



        Heard by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VAITHESWARAN, Judge.**

An injured motorcyclist and his wife appeal adverse summary judgment rulings on their claims for early underinsured motorist (UIM) payments, bad faith, and punitive damages against American Family Mutual Insurance Company and the denial of their post-trial motion for additur.

## I.      *Background Facts and Proceedings*

Mark Paine was injured when a vehicle driven by Marlys Wendel turned in front of the moped he was driving, resulting in a collision that sent him airborne. Paine was taken to the emergency room of a local hospital. He testified to "excruciating" pain in his ribs, hip, knee, arms, and right shoulder. Paine was transferred to the Mayo Clinic in Rochester, Minnesota, where he underwent surgery to repair a fracture in his hip. In time, Paine developed necrosis in the femoral head and underwent hip replacement surgery.

Paine had a motorcycle insurance policy with American Family Mutual Insurance Company providing for bodily injury coverage of $250,000. Paine also had a $1,000,000 umbrella policy with the insurer. He and his wife sued American Family for underinsured motorist coverage. They alleged that they settled with Wendel for her insurance limit of $100,000 and were now entitled to "the full UIM limits" of the motorcycle policy. The Paines also alleged American Family acted in bad faith by refusing to make any UIM payments despite its admission that Paine's damages exceeded the limits of Wendel's coverage.

Both sides moved for partial summary judgment. American Family asked the court to reject the Paines' bad faith claim and request for punitive damages as a matter of law. The Paines sought a declaration that the motorcycle policy

imposed a legal obligation on American Family to make immediate payment of the UIM benefits available under their policy. The district court granted American Family's motion on the bad faith and punitive damage claims and denied the Paines' motion on immediate UIM coverage. The court dismissed the request for declaratory relief and set the UIM claim for trial.

Following trial, the jury found in favor of the Paines and awarded damages of $256,847.69. The Paines filed a motion for new trial and alternative motion for additur. The district court denied the motions, reduced the damage award by another insurer's payments, and entered judgment in favor of the Paines for $156,847.69.

The Paines appealed the summary judgment and post-trial rulings.

## II.    *Denial of Paines' Summary Judgment Motion – UIM Claim*

The Paines contend the district court should have concluded as a matter of law that American Family had a "duty to promptly pay any amount of UIM benefits as soon as the policy holder has reasonably established their right to receive them." *See* Iowa R. Civ. P. 1.981(3) (stating summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). They cite the undisputed evidence that Paine's damages exceeded Wendel's policy limit as well as the following policy language: "We will pay compensatory damages for bodily injury which an insured person is *legally entitled to recover* from the owner or operator of an underinsured motor vehicle." (Emphasis added.)

The phrase "legally entitled to recover" derives from our underinsured motorist statute, which requires coverage "for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle." Iowa Code § 516A.1 (2013). The supreme court has stated, "[T]his language is simply meant to limit UIM benefits to what the injured person would have been entitled to recover from the underinsured motorist *if* the underinsured motorist had been adequately insured and *if* a tort suit against the underinsured motorist had been pursued." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 574 (Iowa 1997). The language "requires the insured to prove the damages he or she would have been entitled to recover had a lawsuit against the underinsured motorist been taken to judgment." *Id.*; *accord Wetherbee v. Econ. Fire & Cas. Co.*, 508 N.W.2d 657, 660 (Iowa 1993) ("[T]he statute requires the claimant to prove that the 'insured' is 'legally entitled to recover damages' from the underinsured motorist."(citation omitted)). This requirement "is an *element* of the insured's claim." *Wetherbee*, 508 N.W.2d at 660. "[T]he plaintiff must be able to establish fault on the part of the uninsured or underinsured motorist which gives rise to damages and to prove the extent of those damages." *Id.* at 661; *see also Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 584 n.3 (Iowa 2004) ("[T]he insured has the burden to prove the uninsured motorist was liable and the extent of the damages.").

Although American Family agreed Paine sustained damages "in some amount," the insurer did not agree on the extent of those damages. This was a matter to be proven at trial. Because the total damages had yet to be determined, the district court did not err in denying the Paines' summary

judgment motion on the UIM claim and setting the matter for trial to determine precisely what the Paines were "entitled to recover."

### III. Grant of American Family's Summary Judgment Motion – Bad Faith and Punitive Damages[1]

The Paines contend the district court erred in granting American Family's summary judgment motion on their bad faith claim and request for punitive damages. They assert American Family had no reasonable basis for denying UIM benefits because "[t]he company's own claims lawyers valued the case as high as $500,000" and American Family agreed Paine's damages exceeded Wendel's policy limit.

The Paines correctly frame the elements of bad faith as whether (1) American Family had no reasonable basis for denying their claim or for refusing to consent to settlement, and (2) American Family knew or had reason to know that its denial or refusal was without reasonable basis. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). A reasonable basis exists to deny "policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Id.* "A claim is 'fairly debatable' when it is open to dispute on any logical basis" or "if reasonable minds can differ on the coverage-determining facts or law." *Id.* "Whether a claim is fairly debatable can generally be decided as a matter of law by the court." *Id.*

---

[1] The Paines couch this issue in terms of the denial of their motion for summary judgment on their bad faith claim, but they simultaneously contend they should have been allowed to go to trial on that claim. We read their argument as a challenge to the court's grant of American Family's summary judgment motion on that claim.

American Family conceded Wendel's liability and conceded the existence of damages but, as noted, did not concede the extent of those damages. In its response to Paine's statement of undisputed facts, American Family stated, "[N]either a settlement evaluation nor a settlement offer constitutes an agreement or admission of the amount of damages insureds are legally entitled to recover." American Family also asserted, "[T]he parties have not been able to reach an agreement regarding the total value [of] damages which Plaintiffs are 'legally entitled to recover.'" In a brief supporting its partial motion for summary judgment and resisting the Paines' motion, American Family reiterated: "The amount of the tortfeasor's 'legal liability' to Plaintiffs remains to be established and no duty exists to pay part of such unestablished amount without a release and proceed to litigate the total amount of UIM benefits payable under the policy." The insurer pointed out that only Paine's past medical expenses were undisputed; Paine's future medical expenses and past and future loss of earnings remained at issue.

American Family stood on firm ground in declining to make partial UIM payments before the extent of damages was conclusively established. *See id.* at 480 (addressing insurer's consideration of prior settlements in assessing reasonable value of present claim and stating "legal liability is measured by what a jury would award; it is not measured by the amount for which such a case could be settled"); *Voland v. Farmers Ins. Co. of Arizona*, 943 P.2d 808, 811-12 (Ariz. Ct. App. 1997) ("[T]he settlement offer was simply a proposal to compromise and resolve the claim, nothing more and nothing less. . . . As [the insurer] correctly notes, 'an unaccepted settlement offer does not liquidate the amount of damages or constitute an admission of "undisputed amounts" owed.'"); *Williams v.*

*Nationwide Mut. Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000) ("We cannot conclude that settlement offers or reserves set aside for insureds' claims equate to 'undisputed amounts' of benefits due under the policies."). Notably, the Paines agreed certain damage requests were disputed, and they presented expert testimony on those damages, including the cost of future hip replacement surgery and past and future earnings. Given the uncertainty associated with these and other damage categories, the district court correctly determined, "[N]o reasonable trier of fact could conclude [American Family] lacked a reasonable basis for denying any of the demands for UIM benefits made by [the Paines] to this point without receiving a full release from [the Paines] in exchange." We discern no error in the district court's rejection of the Paines' bad faith claim and punitive damages request as a matter of law. *See Bellville*, 702 N.W.2d at 482 ("An insurance company simply cannot be expected, at its peril, to predict the exact amount a jury will award.").

## IV.    *Motion for New Trial or Additur*

The jury awarded the Paines the following damages:

| | | |
|---|---|---|
| 1. | Past medical expense | $ 136,847.69 |
| 2. | Future medical expense | $ 15,000.00 |
| 3. | Past loss of function of body | $ 15,000.00 |
| 4. | Future loss of function of body | $ 5,000.00 |
| 5. | Past lost wages | $ 0 |
| 6. | Future loss of earning capacity | $ 5,000.00 |
| 7. | Past pain and suffering | $ 45,000.00 |
| 8. | Future pain and suffering | $ 15,000.00 |
| 9. | Past loss of spousal consortium | $ 20,000.00 |
| 10. | Future loss of spousal consortium | $ 0 |
| | **TOTAL** | $ 256,847.69 |

The Paines contend the verdict bore "no reasonable relationship to the evidence" and was "the product of passion and unfair prejudice, likely injected by American

Family's misconduct before and during trial." *See* Iowa R. Civ. P. 1.1004 (providing grounds on which to grant a new trial). They specifically argue (A) American Family's decision to call Marlys Wendel as a witness "intentionally misle[d] the jury"; (B) American Family failed to produce Mr. Paine's massage therapy records before using them on cross-examination; and (C) American Family's additional conduct "created unfair prejudice to [their] right to a fair trial on the amount of their damages."

### A. Wendel's Testimony

American Family listed Marlys Wendel as a witness. The Paines filed a motion in limine seeking the exclusion of Wendel's testimony on the ground that American Family admitted she was entirely at fault for the accident. The district court ruled she could provide limited testimony on "her recollection of the accident."

As a preliminary matter, American Family contends the Paines failed to preserve error on their arguments concerning Wendel because they did not object to the questions and answers as they were elicited. We disagree.

The Paines challenged Wendel's testimony in its entirety. Although the court advised the Paines' attorney he would still need to lodge objections to specific questions, the court's ruling on the propriety of Wendel's testimony as a whole—which is what the Paines now challenge—was preserved for our review.

Turning to the merits, we agree with the Paines that American Family had no reason to call Marlys Wendel as a witness except to evoke sympathy.[2]

---

[2] Wendel was a seventy-eight-year-old woman who, according to the Paines' attorney, used an oxygen tank.

Wendel admitted liability and American Family's managing attorney testified Wendel was at fault for the accident and Mr. Paine had no fault for the crash. That said, American Family only put Wendel on the stand after the district court ruled she could testify. As for the substance of her testimony, the Paines do not argue that it exceeded the bounds of the court's ruling.

We recognize American Family's attorney made a remark during closing argument that arguably did exceed those bounds—when he stated Wendel would have to pay the Paines. We view this assertion as an isolated misstatement in what the Paines conceded was a relatively clean record. And we agree with the district court that there was no prejudicial impact from any statements that might have "crossed the line." The jury awarded all the past medical expenses the Paines sought. Although the jury reduced other categories of damages, the evidence on those damages was disputed. For example, a physician testified Mr. Paine might need to undergo another hip-replacement surgery "if he live[d] long enough." The cost of the future hip surgery was estimated to be between $42,821 and $45,381 or "a little less than $40,000 today." The jury awarded $15,000. Given the question of Mr. Paine's life span and the uncertainty surrounding whether he would in fact require the additional surgery, we conclude the jury acted reasonably in awarding a lower amount than requested. *See Cowan v. Flannery*, 461 N.W.2d 155, 158 (Iowa 1990) ("A verdict should not be set aside as either too large or too small simply because the reviewing court would have reached a different conclusion.").

*B.    Discovery*

A pretrial discovery order required American Family to produce "medical records."  At trial, American Family questioned Paine about massage therapy sessions he attended but failed to produce Paine's massage therapy records.  The Paines now argue "the net effect . . . was to prejudice or confuse the jury enough to depress the jury verdict below what the evidence established."  We disagree.

Neither side viewed the massage therapy records as medical records subject to disclosure under the discovery order.  American Family's attorney stated he would introduce those records only to refresh Paine's recollection.  Ultimately, the records were not offered or admitted for this or any other purpose.

The trial testimony on massage therapy was limited and elicited by both sides.  On direct examination, the Paines' attorney questioned Mr. Paine about his experience with massage therapy, eliciting a response that he obtained full body massages to alleviate back and shoulder pain. Mr. Paine characterized the massages as "relaxation therapy."  On cross-examination, American Family's attorney asked Paine whether the massages included his shoulder area.  He responded that they did.  This was the sum and substance of the massage therapy discussion.  We discern no discovery violation, no misconduct, and no prejudice arising from the testimony or non-production of massage therapy records.

*C.     Defense Counsel's Additional Conduct*

The Paines argue American Family's attorney "misrepresented additional key facts to the jury" during closing argument.  We will briefly address each claimed misrepresentation.

First, the Paines take issue with defense counsel's representation that one of the physicians who testified for the Paines only saw Paine two years before trial, when he was at his worst.  In fact, the physician also saw Paine less than two weeks before trial, a date counsel did not disclose in his closing argument.

American Family asserts counsel's statement was not a misrepresentation because the district court excluded the physician's updated opinion as well as any observations based on the recent appointment, after the Paines failed to supplement their discovery responses.  While it appears the date of the recent appointment remained in the record, we are persuaded American Family's failure to mention it did not amount to a misrepresentation in light of the court's discovery ruling.  *See Rasmussen v. Thilges*, 174 N.W.2d 384, 391 (Iowa 1970) (noting "trial court has broad discretion in passing on the propriety of jury argument and we will not reverse unless there has been a clear abuse of such discretion").  In any event, the omission was non-prejudicial for the reasons outlined above.

Second, the Paines challenge defense counsel's questions of Ms. Paine concerning whether she would have to "pay back" her health insurer for medical expenses it covered.  The Paines objected to this line of questioning, the objection was overruled, and Ms. Paine answered that she did not know whether she would have to pay back the health insurer.  American Family asked the

question again in a different way, and the Paines' attorney objected again, at which point American Family's attorney withdrew the question. The Paines sought a cautionary instruction stating they would "be required to reimburse their health insurance plan because it's an ERISA-funded plan regardless of what is awarded to them." The district court declined to give the instruction. During deliberations, the jury inquired whether the health insurer would be "paid out of the full settlement or just the amount on Line 1" of the verdict form addressing "[p]ast medical expenses." The court responded that the insurer was "to be paid out of the full settlement." On appeal, the Paines contend the line of questioning resulted in "unfair prejudice."

We question the relevancy of this line of questioning and agree with the Paines that it may have caused confusion. *Cf. Buhr v. Mayer's Digging Co.*, No. 15-0211, 2016 WL 894563, at *3 (Iowa Ct. App. Mar. 9, 2016) (finding evidence of indemnification irrelevant, improper, and prejudicial). But the Paines' attorney informed the jurors in closing argument that "if you award money, [the health insurer] wants it back from the Paines," and the jury awarded the Paines the full amount they sought in past medical expenses. We conclude the Paines were not prejudiced by the questions about their health insurer.

Finally, the Paines take issue with defense counsel's questions about their delay in filing tax returns. Because Paine's earnings were a subject of debate, we are not persuaded counsel's references to their tax returns were beyond the pale.

In sum, the jury award was indeed less than the sum the Paines requested. But defense counsel's conduct did not make it so. The evidence on

all the categories of damages except past medical expenses was disputed, and the jury reasonably could have credited American Family's evidence in reducing those damages. The district court appropriately denied the Paines' new trial motion and request for additur.

**AFFIRMED.**