DONALD J. BASHFORD, appellee, v. LESTER (BUD) SLATER et al., appellants.

No. 49679.

(Reported in 96 N.W.2d 904)

June 9, 1959.

K. L. Kober, of Waterloo, for appellants Lester (Bud) Slater and Hawkeye Racing Association; Mosier, Mosier, Thomas & Beatty, of Waterloo, and Willoughby, Strack & Sieverding, of Grundy Center, for appellant Grundy County Agricultural Society.

Kennedy, Kepford, Kelsen & Balch, of Waterloo, for appellee.

LARSON, J.—This action resulted from an accident on the Grundy County Fairgrounds quarter-mile race track when the plaintiff, Donald J. Bashford, was struck by a car driven by the defendant Lester (Bud) Slater and severely injured. Plaintiff brought the action against Slater, the Hawkeye Racing Association, hereinafter referred to as the Association, and the Grundy County Agricultural Society, hereinafter referred to as the Society, as alleged joint venturers. A jury trial resulted in a verdict and judgment for plaintiff against all defendants in the sum of $49,864. The trial court determined that the verdict was excessive and ordered a remittitur reducing the amount to $33,364, or a new trial. The remittitur was filed. All defendants appealed. Numerous errors were assigned, but for various reasons only three contentions involving failure to have a fair trial need be considered herein, i.e., jury misconduct, the refusal to accept into evidence defendants' waiver agreement (Exhibit 11), and surprise. Only a brief statement of the case will be necessary at this time.

On the evening of August 22, 1953, in accordance with the previous written agreement between the Association and the Society, stock car races were scheduled on the Grundy County track.

The plaintiff had been engaged as official starter and flagman by the Association, and during the past two years he had officiated over fifty races for it.

Actual races are preceded by a warm-up period and time trials. On this occasion, as per custom, the track had been wet

down and several racing cars had been driving around "packing the track." Some were taking their fast laps prior to the time trials.

The weather was clear, but it was "getting along toward dusk." There was a difference of opinion whether the track and grandstand lights were on at the time. Stock cars used in these races have no headlights.

The plaintiff testified that about 7:30 p. m. Mr. Boslough, president of the Association, approached him and said, " 'Don, let's get these races going. We are late.' " They were then in the infield near the place where the official's flags were kept. This place was a spot about two feet from the track across from the grandstand. Customarily the flagman operated within a foot or two of that spot when signaling the drivers.

The official's flags are of different colors and have different meanings. By their use the official communicates his orders to the drivers. The red flag 30 inches square means stop. Plaintiff was wearing the usual black and white checkered shirt on this occasion.

Mr. Ira W. Chumley, a former president of the Association and a past racer and official, testified the flagman is to be on the ground early to see that the cars hold their positions until the track is packed down or "ironed out." When instructed to do so by the president, the flagman gives the cars the signal for them to speed up, "step on it", and take their "fast laps." In accordance with custom and usage, when the flagman clears the track, he "stands wherever it is safe, or at the edge of the track."

After the request to "get the show on the way", plaintiff started onto the track with a red flag. While he remembered nothing after that until he regained consciousness some six weeks later, all others who witnessed the accident testified that he proceeded straight out onto the track some 10 to 20 feet toward the grandstand and flagged down one of the cars driven by Robert Ledtje. As he stepped back toward the infield he was immediately struck by the car following Ledtje driven by the defendant Slater. The plaintiff suffered severe and grievous injuries necessitating large hospital and doctor expenses. He suffered 25% permanent and partial disability.

Plaintiff's petition in two counts, one based upon general negligence and the other on res ipsa loquitur, was attacked by motion to make Count I more specific. Certainly in view of the complicated nature of this case and the divergent interests of the defendants it should have been granted. It was not. The trial court's error in overruling that motion is conceded by plaintiff, but the full significance of that error did not appear until both sides had rested and the wide variety of evidence which had been admitted under the pleadings was found to raise many disturbing fact and law questions apparently not contemplated by the parties. As a result, a large part of the pleadings, motions and rulings are found following, not preceding, the introduction of evidence. This gave rise to the contention by all parties that the issues were being changed in violation of rule 88, R. C. P. We must observe at this point that much of the confusion in this action could have been avoided by the use of a pretrial conference and the clarifying of the issues prior to the acceptance of testimony.

A careful search of the record reveals that the plaintiff based his claim upon the personal negligence of the defendant Slater, imputed to the other defendants as joint adventurers engaged in a common purpose. His belated amendment to conform to the proof clarifies this point and states:

"That on or about August 22, 1953, at between 7 and 8 p. m., this plaintiff while standing just inside the race track owned and operated at that time by the defendant Grundy County Agricultural Society was run into and severely and permanently injured by a 1937 Ford automobile owned and being operated at that time and place by the defendant Lester (Bud) Slater, and that said defendant Lester (Bud) Slater at said time and place was engaged in the furtherance of a common purpose of the defendants Hawkeye Racing Association, an Iowa Corporation, and Grundy County Agricultural Society, also known as Grundy County Fair Association, and/or Grundy County Fair Board, an Iowa Corporation, said common purpose being the putting on of a stock car race at the Grundy County Fairgrounds and that said defendant Lester (Bud) Slater at said time and place was negligent in the following

particulars: (1) In failing to have said car under control. (2) In failing to keep a proper lookout on the track ahead. * * *."

On the other hand the defendants from the start appeared concerned about the relationship between the plaintiff and the Racing Association at the time of the accident. To interrogatories submitted on September 30, 1955, the plaintiff stated at the time of the accident he was not "performing any duties or services for pay", and was not "an employee of the defendant, Hawkeye Racing Association"; also that "Plaintiff was not acting as a racing official for any of the defendants at the time the injuries were sustained."

Defendants contend until plaintiff amended his petition the true basis of his claim was not revealed. It is true plaintiff always denied that at the time of the accident there was any employer-employee relationship existing with any defendant and maintained that he was merely a member of the general public. On the other hand, considerable evidence appears bearing on some such relationship, and the defendants Slater and the Association amended their answer on September 21, 1957, to allege "that at the time the plaintiff was allegedly injured * * * he was employed as a racing official by the Hawkeye Racing Association and assumed the risk of any injuries he may have suffered by reason of the nature of his employment." As to the nature of that relationship, when it began, and its terms, fact questions which should have been determined by the jury under proper court instructions, the record is most unsatisfactory. Whether it is claimed that plaintiff was an independent contractor, a casual employee, or a regular employee of the Association does not appear. That issue, if it was an issue, received no attention by way of court instructions, with the exception of Instructions Nos. 5 and 7 where reference is made to the burden of proof in an employer-employee relationship as it relates to contributory negligence and the mitigation of damages.

I. We have been unable to resolve this case on the issue of contributory negligence or assumption of risk. The members of the court taking part in the determination of this case are equally divided thereon, and we think it will serve no useful purpose to here discuss our differences in applying the well-

known rules to the evidence disclosed by the record. On a retrial, the evidence may or may not be the same.

II. The participating members of this court are also evenly divided as to whether the issue of an employer-employee relationship was involved in the action, along with the consequential effect by the application of rule 97, R. C. P. In a retrial, such issues, if desired, may be clearly raised, and those issues determined by the jury under proper instructions. As a warning, we may observe, due to the different class of defendants, Pandora's box may be opened and many perplexing fact and legal questions may be involved, including the application of the Workmen's Compensation Law.

III. Although after the parties had rested, the trial court permitted the plaintiff to amend his petition making specific his allegation of negligence, it refused to allow in defendants' answer to the amended petition an affirmative allegation that the plaintiff was an employee of the defendant Association and had failed to serve the required notice on the defendants of his election to reject the provisions of the Workmen's Compensation Law.

Paragraph 10 of the answer filed by Slater and the Racing Association, which was struck out by the court, provided "that the plaintiff was an employee of the defendant Hawkeye Racing Association and that plaintiff failed as a condition precedent to commencement of this action to serve notice on these defendants or any of the defendants of his election to reject the provisions of the Workmen's Compensation Law of the State of Iowa."

██ It is well established that the trial court has wide discretion in these matters, and we have repeatedly sustained those rulings. Benson v. Chase Grain Storage Co., 246 Iowa 591, 596, 67 N.W.2d 433, and citations; Johnson v. Johnson, 245 Iowa 1216, 1223, 65 N.W.2d 157; Bateham v. Chicago, M. & St. P. Ry. Co., 195 Iowa 659, 661, 662, 192 N.W. 818. It may be observed, however, in these cases the court's discretion was involved when only one of the parties asked leave to amend to make his allegations more specific. To permit one party to an action of this kind, under the wide scope of the evidence, the privilege of amending his petition and deny it to the other under the court's discretion provided by Rule 88, R. C. P.,

864

would seem a just basis of complaint. The requests were not substantially different. In view of the evidence introduced, defendants' amended answer might have been permitted and, if necessary, further evidence as to that allegation allowed.

█ While we find ourselves reluctant to reverse on the ground that the court abused its discretion, we have no hesitancy in holding that the defendants should have a new trial in the interest of justice because of the element of surprise involved when these new issues first became apparent after the parties had rested.

It is true defendants do not assign as error the court's ruling on plaintiff's motion to strike Paragraph 10, but the basis of our holding is found in Assignments III(e) and III(i), which contend the court erred in failing to grant defendants' motion for a new trial for the reason that the defendant Society was surprised by the evidence, and later by the contention that at the time of the collision plaintiff was acting as an employee of the Racing Association, and as a result it was unable to prepare properly or present its defense relating to the Workmen's Compensation involved.

█ We faced a similar situation in Webber v. Larimer Hardware Co., 234 Iowa 1381, 1389, 15 N.W.2d 286, where we did not pass on the question of abuse of discretion, but held that because, upon remand of the law action, the lower court would have the same discretion to permit plaintiff and defendants to amend as if the case had not been tried, we should only say it may well have allowed the amendment. Also see, as to the rule generally, 3 Am. Jur. 737, section 1241; 5B C. J. S., Appeal and Error, section 1969 (4), page 594. The presumption is that after the remand the lower court's discretion in granting or withholding leave to amend will not be abused.

Anyway, we may assume the issues will then be clearly resolved, and if the issues are to be expanded, at least the various facets involving the status of the plaintiff and his rights and obligations, as well as those of the various defendants, will be contemplated by both court and counsel when the evidence is taken. We find these matters discussed somewhat in American District Telephone Co. v. Kittleson, 8 Cir., Iowa, 179 F.2d 946, 953. Also see Larson, Workmen's Compensation Law 2, section

72.34. We shall not unduly lengthen this opinion by a lengthy discussion of these possible issues. It is sufficient to say they pose some very difficult and interesting problems for court and jury.

IV. Defendants contend, in Division I(e) of their brief and argument, that the trial court erred in refusing to admit into evidence a waiver agreement (defendants' Exhibit 11), signed by Don Bashford, official. It provided:

"Hawkeye Racing Ass'n. Waiver Form. Place of race, Grundy Center. Date of race, 8-22-53. I hereby agree to conform to and comply with the rules governing this contest in connection with the Competition Rules, and I further agree to hold blameless the Contest Committee, the Directors of the Contest, the promoters or sponsors, owners of the premises or any of the officers of The Hawkeye Racing Association, Inc., for any loss or injury in which I may become involved by reason of participation in this contest."

It is plaintiff's contention that the waiver was inadmissible for the reason that it was without consideration and against public policy. We do not agree. The evidence in the record shows all persons entering the track area were required to sign the waiver, that the Association president had informed plaintiff of that requirement at the time he was engaged as an official and that Bashford had agreed. The president, Mr. Howard Boslough, said, "I instructed him of his duties, and I informed him that for those he would be paid $15 and that there would be a sheet for him to sign which all sign releasing any liability. That must be signed on entering any and all races." He also said, "Mr. Bashford was requested to sign the waiver sheet upon arriving at the race track before entering the race track area. He was informed that that was a liability release sheet." Plaintiff admitted he had signed it as he entered the race track on August 22, 1953. We are satisfied there was sufficient consideration for its execution.

Generally speaking, contracts exempting parties from liability for their own negligence are not against public policy. Subject to certain exceptions, based upon the public interest, statutory prohibitions, etc., that rule is well settled. Weik v. Ace Rents Incorporated, 249 Iowa 510, 514, 87 N.W.2d 314, 317,

866

and many authorities cited therein; Sears, Roebuck and Co., Inc.,
v. Poling, 248 Iowa 582, 587, 81 N.W.2d 462, 465, and citations.
In the latter case we recognized the rule in Iowa and stated:
"Indeed the public policy of freedom of contract is best served
by enforcing such provision." Our attention has been called
to no statutory prohibition or public interest opposed to such a
waiver agreement. We think there is none, unless it comes under
the employer-employee relationship discussed in Restatement of
Contracts, subsection 1(a), section 575.

■ However, it is to be noted that the terms of this release
or waiver agreement are not unlike many such contracts, subject
to construction, and when construed must be strictly construed
against the one who prepared it, and claiming relief from lia-
bility for his negligence, Sears, Roebuck and Co., Inc., v. Poling,
supra.

While it may or may not have been error to refuse admis-
sion of the waiver agreement into evidence, and was or was not
prejudicial to the defendants, or some of them, we note that
upon retrial this waiver agreement will be a proper matter for
construction. See Restatement of Contracts, section 575; In re
Estate of Turner, 250 Iowa 795, 96 N.W.2d 481.

V. It is strongly urged that the court erred in failing to
grant defendants' motions for a new trial due to the misconduct
of the jury. Numerous affidavits of jurors, not disputed, relate
to discussions pertaining to the insurance they assumed was in
full force and effect protecting Slater and the other defendants.
In fixing the liability and the amount of the award, the para-
mount consideration of the jury, these affiants said, was not
defendants' negligence or plaintiff's freedom from contributory
negligence or his assumption of risk, but as to what sums could
be allowed which would not exceed the limits of the $50,000 pol-
icy referred to in an agreement between the defendant Society
and the defendant Association. That agreement was introduced
in evidence as plaintiff's Exhibit D, and by Paragraph 4 the
Society was to obtain liability insurance in the amount of $50,000
in connection with the conduct of the stock car races. This was
the sole reference to insurance in the record, and there was no
evidence such insurance was procured by the Society or was in
effect.

All affiants said that insurance was discussed. One juror stated, "I thought and I am sure the other jurors felt that the defendants * * * carried liability insurance and that the insurance company or companies would be the party who would have to pay the verdict that was rendered. I would not have agreed to any verdict against Lester (Bud) Slater or any of the defendants if they were held individually liable."

■ That a juror may not impeach his verdict by testifying to the reason he reached it is well settled. Hicks v. Goodman, 248 Iowa 1184, 1195, 85 N.W.2d 6; Keller v. Dodds, 224 Iowa 935, 943, 277 N. W. 467; In re Estate of Murray, 238 Iowa 112, 120, 26 N.W.2d 58.

But the rule is also clear that a juror may make an affidavit or testify as to matters occurring in the jury room, and if what occurred amounted to misconduct, and if it was of such a character that it is reasonable to believe that it did influence the result of the deliberation and the final verdict, that verdict should not be allowed to stand. Hicks v. Goodman and Keller v. Dodds, both supra; Hackaday v. Brackelsburg, 248 Iowa 1346, 1350, 1351, 85 N.W.2d 514, and citations.

Other statements indicate the items considered by the jury to determine the verdict of $49,864 make clear that other matters outside the record were considered, such as earnings, life expectancy, etc., and that the court's instructions were not followed. There were no denials, explanations or showing to mitigate these statements and inferences. On the other hand, Instruction No. 12 in reference to "assumption of risk" was not considered. From these unrebutted statements, the conclusion is inescapable that there was considerable misconduct by the jury, and from the amount awarded, the extent of that influence appears clear. There was much more here than the expression of a juror's opinion, and we think the misconduct was without doubt so prejudicial to the defendants as to require a new trial.

It is true, considerable discretion is lodged in the trial court in determining whether there has been such misconduct as to require setting aside a verdict. In re Estate of Murray, supra; Olesen v. Henningsen, 247 Iowa 883, 888, 77 N.W.2d 40; Turner v. Hansen, 247 Iowa 669, 674, 75 N.W.2d 341. That rule is well

established. However, under this record we cannot agree with the lower court's conclusion.

The trial court itself was in doubt as to the seriousness of the misconduct, but decided to require only a remittitur reducing the verdict to $33,364 or a new trial. There we part company for we are convinced the statements made and the discussions had were calculated to and did, in reasonable probability, influence not only the verdict for plaintiff but the amount thereof, and such being the case, it must be set aside. In re Estate of Murray, supra; Larimer v. Platte, 243 Iowa 1167, 53 N.W.2d 262; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; 66 C. J. S., New Trial, section 58, page 179.

While we hold, with some reluctance, that the trial court abused its discretion in not granting a new trial, we are satisfied that in the interest of justice, and because of the serious question as to whether for all the reasons set out defendants had a fair trial, a new trial must be granted in this matter.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., who takes no part.