Glen D. FRITZ, Appellee,

v.

IOWA STATE HIGHWAY COMMISSION, Appellant.

No. 60920.

Supreme Court of Iowa.

Oct. 18, 1978.

Richard C. Turner, Atty. Gen. and Asher E. Schroeder and Robert W. Goodwin, Sp. Asst. Attys. Gen., for appellant.

Steven S. Hoth of Hirsch, Link, Adams, Hoth & Krekel, Burlington, for appellee.

REES, Justice.

This is an appeal in an eminent domain proceeding by the defendant Iowa State Highway Commission (now Iowa State Department of Transportation) from a jury verdict rendered in favor of plaintiff in an appeal from a condemnation award. The defendant's postverdict motion for a new trial was overruled and defendant appeals. We affirm.

Plaintiff, Glen D. Fritz, was the owner of a leasehold interest in a farm premises in Des Moines County, the fee title to which was held by his parents, Raymond and Elsie Fritz. In a separate proceeding, the owners of the fee were compensated for their ownership interest in the parcel condemned. Subsequent to the proceeding, Elsie Fritz died and Raymond survived and was living at the date of the trial of the within case.

On February 1, 1974, in accord with the provisions of §§ 472.18 and 472.19, The Code, the plaintiff filed his notice of appeal to the district court from a $2,000 award by the condemnation commission for his leasehold interest in the property condemned. Plaintiff's petition alleged that the fair and reasonable market value of his leasehold interest in the land had been decreased by the taking and prayed initially for judgment against the defendant in the amount of $125,000. The prayer of his petition was subsequently amended to request a judgment of $119,248. Included in the items of damage claimed by the plaintiff was the taking of the strip of property condemned for roadway purposes; damage through rendering obsolescent milking equipment used in conjunction with the plaintiff's dairy operation; damage by rendering obsolescent certain farming equipment owned by plaintiff; and rendering obsolescent plaintiff's entire leasehold interest, causing it to be inoperative for its highest and best use, as a dairy farm. Following trial to a jury, a verdict in the amount of $48,526 was returned, representing the difference between the fair and reasonable market value of plaintiff's leasehold interest before and after the condemnation taking. A second form of verdict submitted to the jury with respect to the reduction in fair market value of plaintiff's personal property was not returned by the jury.

The proceedings involved the condemnation of a tract of 6.3 acres in fee out of the entire parcel owned by Raymond Fritz in which plaintiff claimed a leasehold interest of 91.4 acres in toto. A temporary easement was also condemned over an additional tract of 14.7 acres from which the defendant proposed to take, and later did take, materials for the construction of the highway. The plaintiff's pretrial motion in limine to restrict the highway commission from informing the jury of the amount the owner of the fee, Raymond Fritz, had been compensated in a separate trial for his interest was sustained.

The defendant sought by motion in limine to prohibit any testimony or evidence of alleged reduction in value of plaintiff's personal property which, defendant alleged, was readily moveable, was not required to be used exclusively upon the 91.4 acre parcel, and was not the type of property encompassed by § 472.14, The Code, which concerns compensation for personal property damaged or reduced in value by eminent domain proceedings. Defendant's motion in limine was overruled and the court permitted the introduction of testimony, over objection, of the alleged reduction of the fair market value of such personal property. Defendant's motion for a directed verdict on the issue of damage to personal property on the grounds that plaintiff's own witnesses admitted on cross-examination that the fair market value of the personal property had not been decreased in value generally, but only in value to the plaintiff himself, was overruled and, over objection, the issue of damage to the personal property of the defendant was submitted to the jury.

The trial court also ruled against certain allegations of defendant's motion in limine to prohibit any evidence that plaintiff's oral farm tenancy would extend beyond March 1, 1975, in view of §§ 562.5, 562.6 and 562.7, The Code, and the statute of frauds,

§ 622.32. By way of resistance to defendant's motion in limine in these respects, plaintiff established that he was the sole beneficiary of his father's will, expected as an only child pursuant to his father's promise to inherit the entire parcel of land involved and was also party to an oral covenant with his father by which his tenancy would be annually renewed until his father's death. The life expectancy of Raymond Fritz, plaintiff's father, was established as being 5.19 years as of January 8, 1974. The trial court instructed the jury, over objection, that it could consider plaintiff as having a tenancy for a term of 5.19 years, and overruled defendant's requested instruction to the effect that the oral farm tenancy would expire March 1, 1975.

The defendant's motion in limine, by which it sought to limit testimony or evidence of specific costs to offset any burden or detriment caused by the condemnation, was overruled and, over objection, the court permitted testimony to be adduced of the specific costs of installing a liquid manure disposal system on the property, there being conflicting testimony in the record as to whether the condemnation proceedings necessitated plaintiff's purchase of such a system. The court also overruled that portion of defendant's motion in limine which sought to prohibit testimony or evidence of the reduction in value of the property to plaintiff personally.

After the verdict of the jury was returned, the defendant secured affidavits from three of the eleven jurors who concurred in the verdict, stating that the jury considered the plaintiff to be the owner of the parcel and not the mere tenant, and that the award included compensation for personal property and costs to offset the detriment caused by the condemnation. The defendant's motion for a new trial incorporated the affidavits of the jurors above mentioned, and asserted the trial court erred in not permitting the jury to be advised of the award made in compensation to the owner of the fee and by improperly permitting the jury to consider the oral farm tenancy of the defendant to extend for a period of 5.19 years, resulting in an excessive award to the plaintiff. The defendant further asserted in its motion for new trial that the court erred in permitting the jury to consider alleged reduction in fair market value of plaintiff's personal property which was moveable and was not required to be used exclusively upon the premises. The plaintiff contravened defendant's motion for new trial and obtained affidavits from the foreman of the jury and two other jurors in which they stated the verdict was solely to reflect the decrease in value of plaintiff's leasehold interest.

In overruling defendant's motion for new trial, the trial court concluded that the affidavits of the jurors attached to the defendant's motion concerned matters which were inherent in the verdict of the jury and that the verdict could not be impeached by the affidavits submitted. The court further found the expenditure of money, time and effort by the plaintiff took the case out of the operation of the statute of frauds and that the exceptions contained in § 622.33, The Code, were applicable to the facts of this case. The court further found the highway commission did not have standing to raise the issue of the statute of frauds since it was not a party to the transaction which created the leasehold interest, and since both parties to the oral leasehold agreement admitted its terms.

The following issues are presented for review:

(1) Did the trial court err in permitting testimony relative to the plaintiff's oral farm tenancy and in instructing the jury that the tenancy had an unexpired term of 5.19 years to run from the date of the condemnation, based on the life expectancy of plaintiff's father; or did the provisions of §§ 562.5 and 562.6, The Code, require a finding that the farm tenancy terminated on March 1, 1975?

(2) Did the trial court err in permitting testimony and instructing the jury that it could consider the reduction in the fair market value of plaintiff's personal property used in connection with the condemned land under § 472.14, The Code?

(3) Did the trial court err in overruling defendant's motion in limine to prohibit plaintiff's introduction of evidence of the reduction in value of the property to himself, rather than the decrease in the fair market value of the property?

(4) Did the trial court err in overruling the defendant's motion in limine by which it sought to prohibit plaintiff from presenting evidence of specific costs of equipment to offset the detriment or burden caused by the condemnation?

(5) Did trial court err in sustaining plaintiff's motion in limine and thereby prohibiting defendant from advising the jury of the amount that the owner of the fee title of the parcel condemned had been previously compensated in separate proceedings?

(6) Did trial court err in overruling defendant's motion for a new trial in light of the fact that three of the eleven jurors signing the verdict executed affidavits that the jury considered plaintiff the owner of the land involved and not a tenant with an oral leasehold agreement; and that the jury included damages for reduction in value of plaintiff's personal property and costs to offset the burden of the condemnation in the award for the reduction in fair market value of the plaintiff's tenancy interest?

█ I. In the first issue stated for review, we are concerned with the nature and character of the plaintiff's leasehold interest. The plaintiff claims a tenancy from year to year with a covenant for renewal, and defendant highway commission asserts plaintiff's interest was nothing more than a tenancy at will and thus subject to the termination provisions of §§ 562.5 and 562.-6, The Code, which provide:

562.5 Termination of farm tenancies. In case of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March, except in cases of mere croppers, whose leases shall be held to expire when the crop is harvested; if the crop is corn, it shall not be later than the first day of December, unless otherwise agreed upon.

562.6 Agreement for termination. Where an agreement is made fixing the time of the termination of the tenancy, whether in writing or not, it shall cease at the time agreed upon, without notice. In the case of farm tenants, except mere croppers, occupying and cultivating an acreage of forty acres or more, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other, whereupon the tenancy shall terminate March 1 following; provided further, the tenancy shall not continue because of absence of notice in case there be default in the performance of the existing rental agreement.

There seems to be no dispute that the plaintiff had an oral farm tenancy with his father, the owner of the fee title to the property, and that they had reached an agreement for the lease to run so long as the plaintiff's parents survived. Since the plaintiff's mother had predeceased her husband, the plaintiff established that the life expectancy of a person the age of his father was 5.19 years from the date of condemnation and that such was the term of his leasehold interest.

The defendant highway commission claims the aforementioned §§ 562.5 and 562.6 are determinative of the length of any oral farm tenancy, and that the likelihood of renewal of a farm tenancy beyond the statutory term is speculative and not a legal right, citing Nichols on Eminent Domain, 1976 Ed., Vol. 2, § 5.23(4), pp. 5–100; and that evidence of the term of the oral farm tenancy is inadmissible as being in contravention of the statute of frauds, § 622.32, The Code.

As to the defendant's first contention we said in Denton v. Moser, 241 N.W.2d 28, 32 (Iowa 1976):

"We are satisfied and hold section 562.7 deals only with procedure and remedy. The notice provision merely describes the means by which a landlord can terminate a farm tenancy. It in no way alters or destroys the substantive provisions of the

contract which exist without regard to the statute. All it does is require notice to be given and provides for a one-year continuance of the lease if notice is not forthcoming. No rights are cut off, merely postponed."

From the foregoing statement it would appear the covenant or contract between plaintiff and his father would be determinative of the term of the lease to be considered in the condemnation proceedings so long as not subject to attack under the statute of frauds. This rationale is additionally supported in *State v. Starzinger*, 179 N.W.2d 761, 765 (Iowa 1970) where, in discussing lease terms, we said: ". . . as indicated, property rights of this nature are subject to contractual provisions in leases such as we have here. The terms of the contract, therefore, must control." From the above, it is clear that the statutes providing for the termination of farm tenancies is not preemptory of the contractual provisions of leases and that the uncontroverted agreement between the parties for the term of the oral lease to continue through the life of the lessor was properly before the jury to determine the measure of recovery.

By the terms of the covenant between plaintiff and his father renewal of the lease beyond the statutory period is not speculative, but a legal right of the plaintiff and therefore compensable. As noted in Nichols on Eminent Domain, 1976 Ed., Vol. 2, § 5.23(4) pp. 5–100: "A tenant from year to year with a covenant of renewal may have his damages assessed with reference to the covenant, but a mere expectation of renewal, based on evidence that the landlord and tenant were mutually satisfied and were likely to perennially renew cannot be considered by the courts." The distinction so stated polarizes the positions of the plaintiff and the defendant highway commission, with the provisions of the covenant between plaintiff and his father determining the issue in plaintiff's favor, effectively distinguishing *Scully v. United States*, 409 F.2d 1061 (10th Cir. 1969), cited by the defendant and referred to in *Nichols* in support of the "mere expectation of renewal" position.

As a further objection to the admissibility of evidence of the oral farm tenancy, defendant raises the bar of the statute of frauds, § 622.32, The Code, which states that as to contracts ". . . for the creation or transfer of any interest in lands, except leases for a term not exceeding one year", no evidence of such contracts are admissible unless in writing. The trial court overruled defendant's objection on the grounds that the plaintiff had partially performed the contract, meeting one of the exceptions to the statute of frauds set out in § 622.33, The Code. We do not find it necessary to pass upon the ground relied upon by the trial court because we believe the preliminary question of the defendant's standing to assert the bar of the statute of frauds is determinative. We have long held that none but the parties to the transaction may rely upon the statute of frauds. *Lamb's Estate v. Morrow*, 140 Iowa 89, 96, 117 N.W. 1118 (1908); *Shedenhelm v. Cafferty*, 174 Iowa 195, 199, 156 N.W. 340 (1916); *Osborne v. Osborne*, 196 Iowa 871, 874, 195 N.W. 586 (1923); *Dioptron Co. v. Dimmitt*, 245 Iowa 450, 456, 62 N.W.2d 749, 752 (1954); *Fjelland v. Wemhoff*, 249 N.W.2d 634 (Iowa 1977). See also, Restatement, Contracts 2d, § 218, 73 Am.Jur.2d, Statute of Frauds § 578, p. 217, and 37 C.J.S. Statute of Frauds § 220, p. 715. Since only the plaintiff and his father had standing to assert the statute of frauds, and they did not, the statute of frauds cannot be asserted in this action by the highway commission, and any objections based thereon must fail.

We therefore conclude the evidence admitted by the trial court regarding the term of the oral farm tenancy agreed upon between plaintiff and his father was admissible, and the position of the defendant to the contrary is without merit.

II. The defendant next contends the trial court erred in instructing the jury it could consider the reduction in the fair market value of plaintiff's personal property damaged or reduced in value by the

condemnation under the provisions of § 472.14, The Code, and in overruling objections to testimony upon which the said instruction was based.

We note first, regardless of the merits of the objection made by the highway commission, it is unlikely that the commission was prejudiced by the admission of such evidence since the jury chose not to return the verdict form which provided for an allowance for damages for the reduction in value of plaintiff's personal property.

According to the verdict form which the jury did return plaintiff was compensated only for the reduction in value of his leasehold interest and not for damages to personal property. As no prejudice to the defendant is evident, we find that this issue is not properly before us as it lacks the "concrete adversary nature" of a justiciable controversy.

We therefore perceive no merit in the defendant's contention on this issue.

 III. In the third issue stated for review, the defendant contends the trial court erred in admitting evidence of the value of plaintiff's property to himself rather than limiting such value evidence to the question of the reduction in the fair market value of the property. This stated issue seems to refer to both the plaintiff's leasehold interest in his father's property and the personal property owned by the plaintiff individually. Due to the fact the jury failed to return the verdict allowing recovery for damages to personal property, we are unable to perceive prejudice to the defendant on this issue with respect to the personal property.

As to plaintiff's leasehold interest, there is firm precedent in this jurisdiction for the admissibility of evidence of the personal value of a leasehold interest to its owner. In *Comstock v. Iowa State Highway Commission*, 254 Iowa 1301, 121 N.W.2d 205, 215 (1963), we approved the following jury instruction:

"Ordinarily market value is the criterion, but in the case of a leasehold interest in land underlayed with gravel such as

we have here, value on the open market, or evidence of buying and selling of such a leasehold may not be possible of ascertainment, and the primary finding will be the intrinsic or actual value to the owner."

In *Ranck v. City of Cedar Rapids*, 134 Iowa 562, 563, 111 N.W. 1029, cited in *Korf v. Fleming*, 239 Iowa 501, 32 N.W.2d 85, 95 (1948), we stated:

"It is true that market value and intrinsic value are not necessary equivalents, but proof of the latter is often competent evidence for consideration in determining the former. * * * That is, these items are not to be considered as in themselves affording a basis or measure of recovery, but as explaining and supporting the estimates made of the value of the property as it stands."

In *Korf, supra,* we said at page 95 of 32 N.W.2d:

"In 1 Nichols 'The Law of Eminent Domain', 2d Ed., sect. 233, it is stated: 'Ordinarily, of course, the value of the term is figured upon the basis of the most advantageous use of the estate, * * *. Leases are commonly not assignable without the consent of the landlord, and are so infrequently sold, and vary so much in length of term, rent reserved and other particulars as well as in the character of the property, that it is almost impossible to apply the customary tests of market value to a leasehold interest. It would seem that a lease might well be held to fall within the class of property not commonly bought and sold, and that consequently the intrinsic value, or the value to the owner, might be taken as the best and only available test of market value.' See also sect. 222 in the same volume citing decisions."

We conclude the trial court did not err in overruling defendant's motion in limine and admitting evidence of the intrinsic value of the leasehold to the plaintiff.

IV. Defendant next contends the trial court erred in overruling that portion of defendant's motion in limine which was designed to prohibit plaintiff from offering

evidence of specific costs of equipment, namely, a liquid manure disposal unit, to offset a burden caused by the condemnation. Plaintiff introduced evidence tending to prove the reduction in the leasehold acreage required the installation of a liquid manure spreading system in order to maintain his dairy grade classification, and evidence of the approximate cost of such a system.

Again the issue becomes basically one of characterizing the evidence. The defendant cites *Trachta v. ISHC*, 249 Iowa 374, 86 N.W.2d 849, 855 (1957), where we said:

"... [E]vidence of the cost of any plan or schemes to overcome the lessened value is much too speculative and uncertain, even though accurate estimates of proposed structural costs may be available."

But, as the plaintiff points out, we said in *Interstate Finance Corporation v. Iowa City*, 260 Iowa 270, 273, 149 N.W.2d 308, 312 (1967):

"... [W]e recognize a variety of elements of loss, expense and inconvenience may be considered by the jury, not as substantive elements of damages, but as descriptive of the injury resulting to the leaseholder by the condemnation."

So long as the evidence is admitted as "evidence descriptive of the injury resulting to the leaseholder" to "be considered in determining the fair and reasonable value of the lease interest", *Twin-State Engineering and Chemical Company v. Iowa State Highway Commission*, 197 N.W.2d 575, 580 (Iowa 1972), and not as a specific element of alleged damage, the evidence was properly admitted.

In *Korf, supra*, 32 N.W.2d at page 89, we noted damages were claimed and allowed "for the division of the farm and the consequent damage and inconvenience in its operation because thereof" and for "the increased expense and labor in operating the farm." The purpose of eminent

domain is, of course, to secure the condemnee from loss and in this case there is evidence, like that in *Korf, supra*, to indicate that "in addition to the direct loss from the taking of approximately 7 acres of the farm, he suffered consequential injuries to the remainder of his leasehold in the additional expense and inconvenience of operating the farm." In *Korf* the plaintiff was permitted to testify as to the amount of loss resulting from the condemnation. The need for the liquid manure system is not speculative, but necessary to the continued operation of the dairy in this case, and the expense thereof would appear to be a proper factor in determining the value of the leasehold remainder as a viable dairy operation.

Nichols on Eminent Domain is supportive. In Vol. 4A, § 14.243, pp. 14–172 (1976 ed.):

"The size and shape in which the remainder of the parcel is left is sometimes such that the land cannot be put to its most advantageous use. It is generally agreed that it may be shown to what uses the property might have been put prior to the taking, and the limited uses to which the remainder may be devoted subsequently as a result of such taking. Evidence is admissible that the remainder is no longer capable of use for a particular purpose or that its facility therefor has been impaired."

That the jury was not to take the estimate of the expense of the liquid manure system into consideration as a specific element of damage, but as a factor "bearing upon and tending to show the fair and reasonable market value of the property on the dates herein involved," is conclusively shown by instruction No. 11, which in pertinent part provides:

"These factors or characteristics which tend to show the fair and reasonable market values must not be regarded as distinct and independent items of value, but merely as factors bearing upon and tending to show the fair and reasonable mar-

ket value of the property on the dates herein involved.

"You are not to collect or compute independent or specific items and elements of damage and consider the sum thereof as the damage to which the plaintiff is entitled. In other words, the plaintiff is not entitled to recover the cost of any specific item or the sum total of the various items as such, and the matters above suggested and the other facts and circumstances as shown in the evidence should be considered by you only insofar as they may bear upon the fair and reasonable market value of the property herein involved."

In the light of the instructional safeguards and the nature of the evidence tending to show the value of the remainder of the leasehold, there was no abuse of discretion on the part of the trial court in overruling defendant's motion in limine in this area.

■■■ V. The defendant next contends the trial court erred in sustaining plaintiff's motion in limine and prohibiting defendant from advising the jury that the owner of the parcel had already been compensated to the extent of $42,750 for the condemnation of his fee interest, thus permitting an excessive recovery. Defendant highway commission points out that a majority of jurisdictions hold that one award should be made to the landlord and tenant and then apportioned so as to avoid an excessive recovery, citing *Wilson v. Fleming*, 239 Iowa 718, 31 N.W.2d 393, 401 (1948). Defendant also cites 27 Am.Jur.2d, Eminent Domain, § 270, p. 60:

". . . [T]he jury or other tribunal authorized to make the award should always keep the value of the entire property in mind, and should limit the whole amount to be paid to that value, unless it is clearly shown that the sum of the various interests exceeds the fair market value of the property."

We have, however, held that the fee owner and tenant were entitled to have the damages to their respective interests assessed separately. *Wilson v. Fleming, supra; Korf v. Fleming, supra; Simons v. Mason City and Fort Dodge R. Co.*, 128 Iowa 139, 143, 103 N.W. 129, 131 (1929). Such was the situation here, although it appears to be not the result of a separate action instituted by the plaintiff, but as a consequence of separate proceedings being instituted by the defendant.

While it might well be in the best interests of the condemning authorities to minimize compensation awards by consolidating such actions, such a course was not attempted here. The trial court did what was necessary to avoid an excessive recovery by instructing the jury as to the term of plaintiff's leasehold interest, making no reference to the separate fee interest of the plaintiff's father. As noted in *Simons, supra* :

"The interests of these parties was not joint, but several. One was the owner of the fee and the other had a leasehold interest, and an award to one would in no manner affect or prejudice the other's rights."

Considering the separate nature of the rights involved, it is difficult for us to see how the amount of compensation awarded for the fee interest is relevant to the value of the leasehold interest. So long as evidence admitted in either proceeding is limited to the proper area of inquiry, fair compensation should result. While it might have been convenient for one jury to consider both cases, as did occur in *Wilson* and *Korf, supra*, such was not the case here, any fault being not that of the plaintiff, but of the defendant by not instituting a single condemnation action, or concurrent actions. The fee interest is distinct and separate from the leasehold interest and both interests were subject to separate valuations. The plaintiff's motion in limine in this regard was properly sustained by the trial court.

With respect to any claim that the recovery was excessive, the standard of review

was stated by us in *Twin-State Engineering and Chemical Company v. Iowa State Highway Commission*, 197 N.W.2d 575, 583 (Iowa 1972), citing *Van Horn v. Iowa Public Service Company*, 182 N.W.2d 365, 372 (Iowa 1970):

"A condemnation case is one in which the amount allowed is peculiarly within the province of the trier of fact, and unless the same be shown to be so extravagant or penurious as to be wholly unfair and unreasonable this court has repeatedly refused to interfere with the award. (citations).

"In determining the contention the award is so excessive as to shock the conscience or sense of justice a reviewing court must take the evidence in the aspect most favorable to condemnee which it reasonably bears. *Townsend v. Mid-America Pipeline Company*, Iowa, 168 N.W.2d 30, at 33."

Our view of the record and evidence in a manner most favorable to the condemnee in this case leads us to the conclusion the condemnation award does not appear to be wholly unreasonable or extravagant.

VI. The defendant's final claim is that the trial court's denial of defendant's motion for a new trial, in light of the fact that three of eleven jurors who signed the verdict swore by affidavits that the jury considered plaintiff as the owner of the land involved, was error. Defendant contends the affidavits established the fact the jury included damages for reduction in the value of plaintiff's personal property and other costs to offset the burden or detriment of the condemnation of his leasehold interest.

The substance of the affidavits submitted by defendant to fortify its motion for a new trial are inconsistent with the verdict returned, and the veracity of the affiants who signed the affidavits tendered by the defendant is challenged by affidavits of the foreman of the jury and two other jurors.

We find no merit in defendant's contentions with regard to this stated issue. In *Fischer, Inc. v. Standard Brands, Inc.*, 204 N.W.2d 579, 585 (Iowa 1973), we said:

"The trial court has wide discretion in determining whether alleged misconduct of the jurors is prejudicial. Unless abuse of discretion is clearly shown his decision should not be reversed. (citations)."

We have consistently held that a juror may state by affidavit or other means what actually took place in the jury room since actual happenings do not inhere in the verdict, but we have also said a juror may not by affidavit state what influenced the jury in reaching its decision or verdict as such showing does inhere in the verdict. *Hicks v. Goodman*, 248 Iowa 1184, 1195, 85 N.W.2d 6, 12 (1957); *Bashford v. Slater*, 250 Iowa 857, 867, 96 N.W.2d 904, 910 (1959); *State v. Albers*, 174 N.W.2d 649, 656 (Iowa 1970); *State v. Jackson*, 195 N.W.2d 687, 690 (Iowa 1972).

In *Osterfoss v. Illinois Central Railroad*, 215 N.W.2d 233, 237 (Iowa 1974), we said:

"To support this claim, defendant secured affidavits from a number of jurors relating some of the matters discussed in arriving at the verdict. Defendant claims these affidavits show the jury relied on matters *outside the scope of the instructions which were clearly improper.* Assuming, without deciding, defendant's claim has substance, nevertheless these are elements which inhere in the verdict and which cannot be used to impeach it." (emphasis supplied).

Since the affidavits tendered by defendant in support of its motion for new trial relate to matters discussed in arriving at the verdict, rather than actual happenings in the jury room, the trial court properly refused to dignify them by sustaining defendant's motion for a new trial.

On the whole record we find no error and affirm the trial court.

AFFIRMED.

All Justices concur except ALLBEE, McGIVERIN and LARSON, JJ., who take no part.